[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 24, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-10519

_____

D. C. Docket No. 03-20482-CV-FAM

JACK KING, as personal representative of
the Estate of Jessica King, deceased,
ANETTE FORSMAN, individually and/or
personal representative and/or as the Person
legally authorized under applicable law to
bring this wrongful death case for herself,
all potential beneficiaries and/or the Estate
of Robin Forsman, deceased, et al.,

Plaintiffs-Appellants,

versus

CESSNA AIRCRAFT COMPANY, a foreign corporation,

Defendant-Appellee.

_____

No. 06-10994

_____

D. C. Docket No. 03-22669-CV-FAM

BARBARA BREGA, individually, and/or as
Personal Representative and/or as the
persons legally authorized under applicable
law to bring this wrongful death case for
themselves, all potential beneficiaries and/or
the Estate of Stefano Romanello, deceased,

                                                  Plaintiff-Appellant,

                              versus

CESSNA AIRCRAFT CO., a Kansas corporation,
JEFFERSEN SANDERSON, INC., a Delaware
corporation, d.b.a. Jeppesen Company,

                                                  Defendants-Appellees.

                    _____

            Appeals from the United States District Court
                 for the Southern District of Florida
                    _____

                        **(October 24, 2007)**

Before CARNES and WILSON, Circuit Judges, and STAGG,[*] District Judge.

CARNES, Circuit Judge:

      These cases arise out of a tragic accident that occurred one foggy morning in

October of 2001 at the Linate airport in Milan, Italy.  A private Cessna jet operated

by Air Evex, a German charter company, made a wrong turn, taxiing toward an

_____

      [*]Honorable Tom Stagg, United States District Judge for the Western District of
Louisiana, sitting by designation.

                              2

active runway.  After air traffic controllers apparently failed to make the problem clear to the plane's pilots, the Air Evex jet collided with a Scandinavian Air Systems jet that was just taking flight.  One hundred and eighteen people died, including everyone on board both planes and four people on the ground.  Another person was seriously injured.  It was the deadliest aviation disaster in Italian history.

In addition to litigation that is ongoing in the Italian courts, lawsuits were filed in the Southern District of Florida against Cessna Aircraft Company, an American corporation, by the estates of seventy victims and one personal injury claimant.  The decedents in sixty-nine of the estates were European citizens, as is the personal injury claimant.  We will be calling them the European plaintiffs.  The remaining plaintiff is Jack King, the personal representative of the estate of his daughter, Jessica King, an American citizen.

The district court ordered all of the complaints that had been filed before it, except one (which was the only complaint that stated a contractual claim), consolidated into a master complaint for administrative purposes.  Cessna filed a motion to dismiss in favor of the Italian courts on grounds of forum non conveniens.  The district court eventually granted that motion as to all of the European plaintiffs.  While the district court denied the motion as to the <u>King</u>

plaintiff, it did grant a stay of proceedings in that case pending resolution by the Italian courts of Italian law issues relating to Cessna's liability and any damages the company might owe the plaintiffs. The district court then de-consolidated the cases. We re-consolidated them for purposes of appeal.

This appeal by all seventy-one plaintiffs does not involve any liability or damages issues. Instead, it presents a threshold question of appellate jurisdiction and a question of subject matter jurisdiction. The non-jurisdictional issue presented is whether the district court abused its discretion in dismissing the European plaintiffs' actions on forum non conveniens grounds and staying further proceedings in the King case.

## I.

Cessna filed its motions to dismiss all of the lawsuits on forum non conveniens grounds in January and March of 2004. The district court initially denied those motions. In an order issued in October 2004, the court concluded that Jack King, a citizen of the United States, deserved the full deference to his choice of forum normally afforded domestic plaintiffs. Although it concluded that the foreign plaintiffs were not entitled to that same deference, the court reasoned that it made little sense to dismiss the foreign plaintiffs' suits while retaining King's lawsuit. Doing that would result in two sets of lawsuits involving the same

4

accident proceeding in different jurisdictions, ostensibly in the name of convenience. The court noted that the plaintiffs' theory of liability turned on acts at Cessna's corporate headquarters in the United States, and it found that, while the dispute was governed by the substantive law of Italy, the Italian law issues were "fairly simple." After balancing the relevant public and private interest factors, the court concluded that Cessna had "failed to show that a material injustice would be manifest" if the case proceeded to trial in the United States.

Cessna moved for reconsideration. The district court denied that motion as well, but had some doubt about its subject matter jurisdiction based on the domicile of Jessica King at the time of her death. The court invited Cessna to file a motion to dismiss on that ground, which it did. After considering that motion to dismiss and the plaintiffs' opposition, the district court concluded that the presence of the King plaintiff did not destroy the diversity of citizenship which was necessary to the court's subject matter jurisdiction over the lawsuit.

After the district court had denied Cessna's motions to dismiss, and as the litigation progressed, the court found that the cases had changed in two ways relevant to this appeal. First, the court perceived that the plaintiffs' claims had evolved from a theory of liability that focused on acts and omissions by Cessna at its corporate headquarters in the United States to a theory dependent on acts by

5

Cessna's agents at the Linate airport in Milan. This shift in the factual locus of liability, combined with changes in Cessna's defense strategy, convinced the court that the Italian law issues were going to be more complicated than it had thought. The second way in which the circumstances had changed is that Cessna presented the district court with evidence that some of the plaintiffs in the cases before it, including Jack King, were litigating a civil action in Italy against Air Evex and various Italian governmental entities.

Responding to these changed circumstances, the district court asked the parties to re-brief Cessna's motion for reconsideration of the forum non conveniens issue. After considering those briefs and hearing argument on the matter, the court issued an order in October of 2005 in which it re-weighed the public and private forum non conveniens factors and concluded that a dismissal based on forum non conveniens was warranted as to the actions of all of the foreign plaintiffs but not as to Jack King's lawsuit.

The district court's order dismissing the foreign plaintiffs' actions on forum non conveniens grounds was based on the combined effect of several factors. The nature of the claims and defense strategy had changed, complicating the Italian law issues and making Italy an increasingly attractive forum for resolution of the

disputes. The fact that some of the plaintiffs were already litigating in Italy made parallel litigation unavoidable.

Still, the court decided not to dismiss the King lawsuit on forum non conveniens grounds. The difference between King and the European plaintiffs, the court explained, is that, as a United States citizen plaintiff, King is entitled to a presumption in favor of his chosen forum. Moreover, it noted, much of the evidence relating to King's claims either already had been discovered in the United States or was likely to be found here.

Even though the district court thought King was entitled to litigate his lawsuit here, the court was not ready to proceed with it. Instead, the court decided to stay the King case pending resolution of the related litigation in the Italian courts, which hopefully would provide answers to some of the Italian law issues. By staying the case, the district court reasoned that it could reduce the cost of duplicative litigation, increase the likelihood that it would resolve the Italian law issues correctly, and provide King with the forum to which he was entitled.

This is the appeal of the district court's order by the European plaintiffs dismissing their actions on forum non conveniens grounds, and King's appeal of the order staying proceedings in his case pending the outcome of the Italian litigation.

## II.

We begin our analysis with a review of our jurisdiction to hear this appeal because, if the requirements for appellate jurisdiction are not met "we cannot review whether a judgment is defective, not even where the asserted defect is that the district court lacked jurisdiction." United States v. Machado, 465 F.3d 1301, 1306 (11th Cir. 2006). On February 8, 2006, we issued the following jurisdictional question:

> Whether the district court's November 1, 2005, order dismissing the case as to the 69 foreign plaintiffs and staying the case as to plaintiff Jack King and the December 14, 2005, order denying reconsideration are final and appealable? See 28 U.S.C. § 1291; Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S. Ct. 308, 311, 13 L.Ed.2d 199 (1964); FOGADE v. ENB Revocable Trust, 263 F.3d 1274, 1285 (11th Cir. 2001); Sigalas v. Lido Mar., Inc., 776 F.2d 1512, 1516 (11th Cir. 1985); Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368–69 (11th Cir. 1983); Broussard v. Lippman, 643 F.2d 1131, 1133 (5th Cir. Unit A Apr. 1981).

Cessna responded with a motion to dismiss the appeal, [Appellee's Mot. to Dismiss Appeal] contending that the district court's order was not a final judgment as to all parties, because the court had stayed rather than dismissed King's claims.

The general rule is that a stay is not a final disposition, and thus not immediately appealable. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n.11, 103 S. Ct. 927, 934 n.11 (1983). However, there is an exception for stays that put a plaintiff "effectively out of court," and in applying

8

that exception we have held that a stay order that is immoderate and involves a protracted and indefinite period of delay is final and appealable under 28 U.S.C. § 1291. Id; see also Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc., 743 F.2d 1519, 1523–24 (11th Cir. 1984); CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1287–88 (11th Cir. 1982).

Cessna attempts to escape the force of those precedents by equating the principle they apply to the "death knell" doctrine, see generally Kmart Corp. v. Aronds, 123 F.3d 297, 300 (5th Cir. 1997). It argues that we need not follow those precedents because the Supreme Court's decision in Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 116 S. Ct. 1712 (1996), sounded the death knell of the death knell doctrine.

The Supreme Court first recognized the doctrine at issue in this case, the "effectively out of court" version of finality, in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 n.2, 82 S. Ct. 1294, 1296 n.2 (1962). In that case a liquor distributor filed a complaint in federal court seeking a declaratory judgment that the New York Alcoholic Beverage Control Law would be unconstitutional as it was applied. Id. at 714, 82 S. Ct. at 1295. The distributor asserted a statutory right to have its case heard by a three judge panel. Id. The district court refused to convene a three judge court and stayed the lawsuit based on the Pullman abstention

9

doctrine, under which federal courts abstain from resolving constitutional disputes where a state court's clarification of its own law might render a constitutional ruling unnecessary. Id. at 714, 82 S. Ct. at 1295–96; see R.R. Comm'n v. Pullman Co., 312 U.S. 496, 501–02, 61 S. Ct. 643, 645–46 (1941). The Second Circuit found that it had jurisdiction over the appeal and held that the district court had erred in refusing to convene a three judge panel, but nonetheless dismissed the appeal for reasons not relevant to our discussion. Idlewild, 370 U.S. at 714, 715 n.2, 82 S. Ct. at 1296 & n.2. On review the Supreme Court noted: "The Court of Appeals properly rejected the argument that the order of the District Court 'was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292,' pointing out that 'appellant was effectively out of court.'" Id. at 715 n.2, 82 S. Ct. at 1296 n.2. The Court offered no further explanation. Id.

Two decades later in Moses H. Cone, the Supreme Court applied Idlewild's "effectively out of court" doctrine. Moses H. Cone, 460 U.S. at 9–10, 103 S. Ct. at 933–34. There a federal district court had stayed an action under the Colorado River abstention doctrine, which permits a federal court to abstain from exercising concurrent jurisdiction with a state court under certain exceptional circumstances. Id. at 4, 103 S. Ct. at 931; see Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817–21, 96 S. Ct. 1236, 1246–48 (1976). The Fourth Circuit

10

reversed the stay, and the Supreme Court affirmed. Moses H. Cone, 460 U.S. at 4, 103 S. Ct. at 931. In doing so, the Court explained that since it had found that it had jurisdiction over the Idlewild appeal, it must also have jurisdiction over the Moses H. Cone appeal, because "the argument for finality of the District Court's order is even clearer" under Colorado River abstention than under Pullman abstention. Id. at 10, 103 S. Ct. at 933. That is so because "[a] district court stay pursuant to Pullman abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds." Id. at 10, 103 S. Ct. at 934. By contrast, a stay under Colorado River usually contemplates there will be no further litigation in the federal forum. Id.

The Supreme Court in Moses H. Cone did clarify that Idlewild had not created a broad exception to "the usual rule that a stay is not ordinarily a final decision for purposes of § 1291, since most stays do not put the plaintiff 'effectively out of court.'" Id. at 10 n.11, 103 S. Ct. at 934 n.11. What it was doing in Moses H. Cone, the Court explained, was no more than extending the Idlewild decision to cases involving Colorado River abstention "or a closely similar doctrine." Id.

11

The Court also made clear in <u>Moses H. Cone</u> that the "effectively out of court" doctrine was not the same thing as the "death knell" doctrine, which by then had been scrapped. <u>Id.</u> The difference, the Court explained, is that in a "death knell" case "the order sought to be appealed ha[s] no <u>legal</u> effect on the named plaintiff's ability to proceed with his individual claim in federal court," although the plaintiff may elect not to continue. <u>Id.</u> For example, when a court refuses to certify a class, the named plaintiff has a legal right to proceed, even though the economic incentive to do so has been diminished. <u>Id.</u> By contrast, in a case where the district court's order puts the plaintiff "effectively out of court" continued federal court litigation is not an option. "There is an obvious difference between a case in which the plaintiff himself <u>may choose</u> not to proceed, and a case in which the district court <u>refuses to allow</u> the plaintiff to litigate his claim in federal court." <u>Id.</u>

Finally came the <u>Quackenbush</u> case, in which the Supreme Court examined the appealability of an abstention-based remand order entered under the <u>Burford</u> abstention doctrine, under which federal courts may dismiss certain cases in deference to complex state administrative procedures. <u>Quackenbush</u>, 517 U.S. at 709, 116 S. Ct. at 1717; <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 333 n.29, 63 S. Ct. 1098, 1107 n.29 (1943). The Court concluded that the "order remanding on

12

grounds of Burford abstention is in all relevant respects indistinguishable from the stay order we found to be appealable in Moses H. Cone." 517 U.S. at 714, 116 S. Ct. at 1719. The "relevant respects" the Court identified were that the order put the litigants "effectively out of court" and that "it conclusively determine[d] an issue that [was] separate from the merits, namely, the question whether the federal court should decline to exercise its jurisdiction in the interest of comity and federalism." Id. at 714, 116 S. Ct. at 1719–20.

Our Circuit has had several opportunities to apply the "effectively out of court" doctrine. See Stone, 743 F.2d at 1522–24; CTI-Container Leasing Corp., 685 F.2d at 1287–88; Hines v. D'Artois, 531 F.2d 726, 730–32 (5th Cir. 1976). In Hines, which was issued after the Supreme Court's decision in Idlewild but before its decisions in Moses H. Cone and Quackenbush, we held that we had jurisdiction over an appeal from a district court order staying litigation in an employment discrimination lawsuit until the plaintiffs filed a complaint with the Equal Employment Opportunity Commission and pursued it to final EEOC action. Hines, 531 F.2d at 728. In CTI-Container, also decided before Moses H. Cone, we found that we had jurisdiction over an order staying a lawsuit pending a determination by the Iran-United States Claims Tribunal of its jurisdiction to hear the claims raised in that lawsuit. CTI-Container, 685 F.2d at 1286, 1288.

13

In Stone we had our first opportunity to apply the Idlewild doctrine in light of the Moses H. Cone decision. Stone, 743 F.2d at 1523. The district court in Stone had entered a stay pending the resolution of a previously filed state action. Id. at 1521. Both of the "parties acknowledge[d] that the state lawsuit will not decide the issues presented in [the plaintiff's] federal claim." Id. at 1523. We held that we have jurisdiction over litigants placed "effectively out of court" even where a "state decision will not have res judicata effect on the merits of [the plaintiff's] federal claim." Id.

We have yet to address the effect of the Quackenbush decision on the scope of Moses H. Cone. Four years after Quackenbush, we did on facts similar to those here vacate as "immoderate" a stay of a case pending the resolution of a related one in another country. See Ortega Trujillo v. Conover & Co. Commc'ns, 221 F.3d 1262, 1264–65 (11th Cir. 2000). However, our Trujillo opinion did not recognize any jurisdictional issue, much less explain why we had jurisdiction to decide the appeal. See generally id. The implication of our Trujillo decision—that we have jurisdiction in this situation—does not bind us, because the prior precedent rule does not extend to implicit jurisdictional holdings. See Okongwu v. Reno, 229 F.3d 1327, 1330 (11th Cir. 2000). We are free to decide the issue here, just as though there were no Trujillo decision, but we reach the same conclusion.

14

Applying the "effectively out of court" doctrine to the facts before us, it is apparent that King is at least as "effectively out of court" as the plaintiff in Idlewild was. The only notable difference between this case and Idlewild is that the stay in this case was issued in favor of foreign litigation, while the stay in Idlewild was issued in favor of state court litigation. The question, then, is whether that distinction matters to application of the "effectively out of court" exception to the finality rule of appellate jurisdiction.

Cessna, of course, contends that it does matter. It argues that "[f]or purposes of appealability, the significance of abstention doctrines based on federalism is that generally, when a federal court abstains in deference to a state court or [state] regulatory agency, the abstention necessarily ends the federal court's involvement with the suit." (quotation marks and alternations in original omitted). That is true, Cessna says, because the resulting judgment in state court will often have res judicata effect on any later federal litigation. This is a sophisticated argument, but not one that can be squared with the Idlewild decision.

If the Idlewild doctrine were confined to cases in which abstention necessarily will end federal court involvement in the lawsuit, or generally does so, the Supreme Court was mistaken about the disposition of that very case, and for our purposes the Supreme Court never makes a mistake. In Idlewild the district

15

court had stayed the federal litigation based on Pullman abstention. See Moses H. Cone, 460 U.S. at 9, 103 S. Ct. at 933. As the Supreme Court later reminded us in Moses H. Cone, the Pullman doctrine is not one of the state court abstention doctrines that is likely to result in a res judicata effect on subsequent federal litigation. Id. at 10, 103 S. Ct. at 934. Instead, "[a] district court stay pursuant to Pullman abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds." Id. If, as Cessna argues, the Idlewild doctrine did not apply to cases in which "the expectation [is] that the federal litigation will resume" should the plaintiff be unhappy with the state court results, the Supreme Court would have reached the opposite jurisdictional holding in Idlewild itself.

Cessna's characterization of the "effectively out of court" exception could only be correct if Moses H. Cone or Quackenbush overturned Idlewild. Neither did. Both indicate that Idlewild remains good law. See id. at 10 n.11 ("This answers the dissent's argument that Idlewild was overruled. . . ." (citations omitted)); Quackenbush, 517 U.S. at 713, 116 S. Ct. at 1719 (referring to its holding as "this reliance on Idlewild"). We can conclude that the Supreme Court meant what Cessna says it did only if we assume that the Supreme Court

16

overlooked a significant fact in <u>Idlewild</u>, discovered that oversight in <u>Moses H. Cone</u>, and then misstated what it had done on two later occasions.

Even if we wanted to make such a dubious assumption, we would be barred from doing so for two reasons. The first is that we have held even after <u>Moses H. Cone</u> that the <u>Idlewild</u> "effectively out of court" doctrine applies to stays in which the other lawsuit will not decide the issues presented in the federal case. <u>Stone</u>, 743 F.2d at 1523. We must follow our <u>Stone</u> precedent until it is clearly overruled by either this Court sitting en banc or by the Supreme Court. <u>Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.</u>, 475 F.3d 1228, 1230 (11th Cir. 2007). Even if we were to conclude that Cessna's reading of <u>Moses H. Cone</u> and <u>Quackenbush</u> is a viable one, "we are not at liberty to disregard binding [circuit] case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." <u>Fla. League of Prof'l Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457, 462 (11th Cir. 1996).

The second reason we cannot hold that <u>Moses H. Cone</u> or <u>Quackenbush</u> implicitly overruled the <u>Idlewild</u> decision is that the Supreme Court has repeatedly instructed us that: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the

17

prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989); accord, e.g., Hohn v. United States, 524 U.S. 236, 252–53, 118 S. Ct. 1969, 1978 (1998); Agostini v. Felton, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997).

Where this leaves us is that the "effectively out of court" exception to the final judgment rule is not categorically inapplicable where a stay has been entered in favor of foreign court litigation. Its application in a particular case depends on the formula enunciated in Quackenbush: Whether the litigant has been placed "effectively out of court," which will happen when a federal court stays its hand to allow another court to assume partial jurisdiction over the merits of the suit. Quackenbush, 517 U.S. at 714, 116 S. Ct. at 1719–20. In making that determination we must be careful not to breathe new life into the moribund "death knell" doctrine by permitting an appeal where the "order sought to be appealed ha[s] no legal effect on the named plaintiff's ability to proceed with his individual claim[s] in federal court." Moses H. Cone, 460 U.S. at 10 n.11, 103 S. Ct. at 934 n.11.

Jack King's appeal fits within the "effectively out of court" exception to the final judgment rule. He has for all practical effects been put out of court indefinitely while litigation whose nature, extent, and duration are unknown, is

18

pending in Italy. The district court has held its hand while Italian courts assume or continue what amounts to jurisdiction over the merits of the lawsuit. Their decision of Italian law issues will be followed by the district court. The stay order does have the legal effect of preventing King from proceeding with his claims in federal court for an indefinite period of time, potentially for years. Because he has been effectively put out of court, we have jurisdiction to review the order that did put him out.

We do not mean that there are no differences between federalism and international comity for purposes of evaluating the merits of a stay order, as distinguished from deciding whether appellate jurisdiction exists to review the stay order. As Cessna has reminded us, we have previously observed that: "The relationship between the federal courts and the states (grounded in federalism and the Constitution) is different from the relationship between federal courts and foreign nations (grounded in the historical notion of comity)." Posner v. Essex Ins. Co., 178 F.3d 1209, 1223 (11th Cir. 1999). Those important differences do not, however, affect the extent to which a plaintiff is placed "effectively out of court," which is the measure that defines our appellate jurisdiction over stay orders.

**III.**

19

We turn now to the issue of whether the district court had subject matter jurisdiction over this lawsuit based on diversity of citizenship. The plaintiffs argue that Cessna's contention that jurisdiction is lacking is not properly before us because Cessna did not file a cross-appeal from the district court's conclusion that it did have jurisdiction. It is not too unkind to label this argument frivolous, because "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 1331 (1986) (quotation marks omitted); accord Defiance Water Co. v. City of Defiance, 191 U.S. 184, 194, 24 S. Ct. 63, 67 (1903) ("The fundamental question of jurisdiction, first, of this court, and then of the court from which the record comes, presents itself on every writ of error or appeal, and must be answered by the court, whether propounded by counsel or not."); Anderson v. Watt, 138 U.S. 694, 701, 11 S. Ct. 449, 450–51 (1891); see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Cessna contends here, as it did in the district court, that the presence of the estate of Jessica King destroys diversity. Where an estate is a party, the citizenship that counts for diversity purposes is that of the decedent, and she is deemed to be a

20

citizen of the state in which she was domiciled at the time of her death. 28 U.S.C. § 1332(c)(2); Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1562 n.1 (11th Cir. 1994).

Cessna argues that although she was born in California, Jessica King had severed her ties to her home state and at the time of her death was domiciled abroad, specifically in Denmark. If Cessna is correct that King was domiciled abroad, there is no diversity of citizenship. A United States citizen with no domicile in any state of this country is "stateless" and cannot satisfy the complete diversity requirement when she, or her estate, files an action against a United States citizen. (Cessna is a Kansas corporation, making it a citizen of at least one state.) See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828, 109 S. Ct. 2218, 2221 (1989).

Cessna points to substantial evidence that Jessica King maintained only minimal ties to California after last residing there in 1990, eleven years before her death. It also argues that the district court erroneously placed the burden of proof on Cessna to show a change in King's domicile.

King argues that his daughter's California domicile, which she acquired at birth, was unaffected by her subsequent travels, because she never formed the requisite intent to change that domicile during her foreign residency. Instead, she

21

resided abroad only as part of her mobile career in hotel management. Both parties submitted evidence to the district court concerning whether Jessica King had changed her domicile from California, and the court found that she had not.

The crux of Cessna's attack on the district court's finding is its assertion that the court erred by failing to apply a presumption that Jessica King was domiciled in the country in which she resided at the time of her death. Where, as here, the plaintiff asserts diversity jurisdiction, he has the burden to prove that there is diversity. Slaughter v. Toye Bros. Yellow Cab Co., 359 F.2d 954, 956 (5th Cir. 1966) ("The burden to show the jurisdictional fact of diversity of citizenship [is] on the . . . plaintiff.").[1] However, once a plaintiff shows a former domicile, "the presumption is that it continues to exist," and the burden shifts to the defendant to present evidence that the domicile changed. Id. at 955 (quoting Stine v. Moore, 213 F.2d 446, 447 (5th Cir. 1954)).

One way for the defendant to satisfy the burden of producing evidence that the domicile changed is by showing that the plaintiff resided elsewhere at the crucial time, which in this case is the time of death. Id. at 956 ("The presumption, upon which the [plaintiff] relies, of the continuance of the domicile of origin is met

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

by the counter-presumption of domicile in the jurisdiction where the party is a resident at the crucial time . . . .").  If the defendant meets this burden, the plaintiff must come forward with evidence showing that the relocation was "for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling."  Ennis v. Smith, 55 U.S. (14 How.) 400, 423 (1853).  If the plaintiff fails to show that, the place of residence at the crucial time in the litigation becomes the domicile.  Id.

According to Cessna, in waltzing through these presumptions the district court tripped over its feet by requiring that Cessna prove King had changed her domicile of birth even after it had proven that King resided abroad at the time of her death.  Casting the issue as a legal one would help Cessna escape the highly deferential clearly erroneous standard that is applicable to fact findings relating to diversity, see Sweet Pea Marine, Ltd.  v. APJ Marine, Inc., 411 F.3d 1242, 1248 (11th Cir. 2005), because we review de novo whether the district court applied the correct legal standard.  Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1021 (11th Cir. 2004).

The district court, however, did not trip up on the law.  Instead, the court recognized, in its words, that there is a "presumption which flows from residency at the time of death."  It rejected Cessna's position not because the company had

23

failed to meet its burden of production, but because the <u>King</u> plaintiff had presented convincing evidence that King's stay abroad was, again in the court's words, "temporary or transitory in nature due to her work and career goals."

The notion that a citizen of a state does not lose her domicile when her employer sends her abroad is as old as the presumption that a plaintiff's foreign residence is her domicile. In recognizing the presumption on which Cessna relies, the Supreme Court in 1853 carved out an exception for business travel. <u>Ennis</u>, 55 U.S. (14 How.) at 423. The Court wrote:

> But when there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling, [residence elsewhere] does change the domicil.

<u>Id.</u> The district court, in applying the relevant precedent, did not ignore the presumptive effect of Jessica King's residence abroad at the time of her death; instead, the court found from the evidence that she was there, in <u>Ennis</u> terms, "in the exercise of some particular profession," that profession being hotel management.

Because the district court committed no legal error in analyzing the facts related to the diversity issue, we are left with the question whether its finding that King traveled pursuant to her career is clearly erroneous. It is not. Cessna did

24

present substantial evidence that Jessica King's ties to California had grown increasingly attenuated, but the estate countered with evidence that she had spent her years abroad slowly building experience with the Marriott corporation. As the district court carefully laid out in its findings, Jessica King's residence in each foreign country where she had lived was in pursuit of her career goals. She continued to visit California regularly while she was residing abroad, and her parents testified that she intended to return there. Although King may have left the "when" of her return open, she had decided the "whether" of it, and in this context whether is what matters. District of Columbia v. Murphy, 314 U.S. 441, 455 n.9, 62 S. Ct. 303, 309 n.9 (1941).

As so often is the case, the evidence gave rise to conflicting inferences, but that is why we have factfinders. Acting in its role as factfinder, the district court resolved the conflicts in favor of the plaintiff and found, as it properly could, that Jessica King retained her original domicile in California. In light of that finding, there is diversity of citizenship subject matter jurisdiction.

**IV.**

Having concluded that both we and the district court have jurisdiction over this case, we turn to the question of whether the district court abused its discretion in staying further proceedings in the King case. We have repeatedly held that a

25

stay order which is "immoderate" and involves a "protracted and indefinite period" of delay is impermissible. Stone, 743 F.2d at 1523–24; see also Trujillo, 221 F.3d at 1264–65; CTI-Container, 685 F.2d at 1288–90; Hines, 531 F.2d at 733–35.

Trujillo is particularly instructive. In that case we vacated as immoderate a stay pending litigation in the Bahamas because it "seem[ed] indefinite" and it appeared that the stay would expire only after the conclusion of litigation in that foreign forum. Trujillo, 221 F.3d at 1264. This stay, likewise, seems indefinite and apparently will expire only after the conclusion of litigation in Italy. The only way in which this stay materially differs from the one entered in Trujillo is that there the district court expressly found that the litigation already pending in the Bahamas would "directly relate" to those issues raised before the federal court. Id. That distinction, however, only helps King's argument. Here, we have minimal evidence to assess the scope of litigation in Italy and no assurance at all that the Italian proceedings will directly relate to the issues in this lawsuit. Although the district court has asked the parties to submit status reports on the Italian litigation, Trujillo rejected the idea that regular reports can save an otherwise indefinite stay. Id. at 1264 n.3.

Cessna argues that this stay bears a strong similarity to an order certifying questions of state law, a practice this circuit regularly follows. A certified

question, however, immediately triggers a state proceeding on the precise question at issue in the federal litigation, and we are assured by past experience that our state court colleagues will act with reasonable dispatch. By contrast, there is no indication when, if ever, the Italian litigation will resolve the claims raised in this case, and whether King will have a meaningful opportunity to participate in those proceedings.

For all of these reasons, we will vacate the stay the district court entered in the King lawsuit and remand that case for further proceedings consistent with this opinion.

## V.

The final issue before us is whether the district court abused its discretion in dismissing the actions of the European plaintiffs on forum non conveniens grounds. We will not address that issue on the merits in this appeal, because we think the most prudent course is to vacate that order and remand for further consideration in light of our decision vacating the order staying proceedings in the King case. In balancing the forum non conveniens factors and concluding that it should dismiss the foreign plaintiffs, the district court relied in part on its belief that by staying the King case and nudging the foreign plaintiffs towards litigation in a more appropriate forum it could avoid wasteful and duplicative litigation.

27

Because we are vacating the stay order and recognizing King's right to proceed in the district court, one of the considerations that led to the district court's ruling in the cases of the European plaintiffs has changed. If the district court had known it could not avoid dual proceedings by staying the <u>King</u> case, it might have dismissed all of the plaintiffs, including King, or allowed all of the plaintiffs to proceed here, or perhaps pursued some other avenue. Rather than speculate as to what, if anything, the court might have done differently had it known that it could not stay proceedings in the <u>King</u> case, we will vacate and remand this entire case to the district court so that it can decide. In doing so, we neither express nor imply any view on the correctness of any options that the district court may choose on remand. Our decision in this appeal is limited to holding that the court had subject matter jurisdiction based on diversity of citizenship, that the stay of the <u>King</u> case cannot stand, and that the district court ought to decide in the first instance how to proceed from here.

We VACATE the order staying the <u>King</u> case and the order dismissing the cases of the foreign plaintiffs, and we REMAND the cases to the district court for further proceedings consistent with this opinion.