[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14037
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-14319-RLR

ALFRED RHINER,

Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
Julie Jones, OKEECHOBEE CI WARDEN,
John/Jane Doe, OKEECHOBEE CI WARDEN,
Lars Severson, ASSISTANT WARDEN, OKEECHOBEE C.I.,
Mr. Snyder, DUTY WARDEN, OKEECHOBEE C.I.,
John/Jane Doe, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 4, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Alfred Rhiner, a Florida prisoner proceeding *pro se*, appeals the district court's entry of judgment in favor of the defendants, based on the district court's partial grant of the defendants' motion to dismiss and subsequent grant of the defendants' motion for summary judgment, in his 42 U.S.C. § 1983 action asserting an Eighth Amendment claim based on the defendants' failure to protect him from an assault.  On appeal, Rhiner generally contends that the district court improperly granted the defendants' motion to dismiss in part by dismissing as a defendant the Secretary of the Florida Department of Corrections ("FDC") who was appointed after his assault, and his claims for injunctive relief.  Rhiner additionally challenges the district court's denial of his motion to amend his complaint to add the Secretary of the FDC at the time of his assault, which the district court had also addressed in its order on the defendants' motion to dismiss.  Second, Rhiner argues that the district court erred in granting the defendants' motion for summary judgment on his claims alleging that: (1) he was assaulted by gang members because of his non-gang member status; (2) he was assaulted with a razor; and (3) he was assaulted in a known "blind spot," where prison officials could not see and assaults regularly occurred.  Lastly, Rhiner attempts to challenge various non-dispositive orders issued by the magistrate judge, including discovery

2

orders and an order denying his motion to appoint counsel, and argues that there were still outstanding discovery issues when summary judgment was granted.

## I.    RHINER'S CLAIMS WITH RESPECT TO THE SECRETARIES OF FDC AND HIS CLAIM FOR INJUNCTIVE RELIEF

"[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Furthermore, an issue is considered abandoned when a party seeking to raise a claim or issue on appeal fails to plainly and prominently so indicate. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-83 (11th Cir. 2014) (explaining that an appellant also abandons a claim when: (a) he makes only passing references to it, (b) he raises it in a perfunctory manner without supporting arguments and authority, or (c) the references to the issue are mere background to the appellant's main arguments or are buried within those arguments). Although we liberally construe briefs filed by *pro se* litigants, they can abandon issues on appeal by failing to properly brief them. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (noting that a *pro se* litigant abandoned issues by failing to brief them on appeal).

We generally review the denial of a motion to amend a complaint for an abuse of discretion, but review questions of law *de novo*. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007). After the time

has expired in which a party could have amended as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)-(2).  We have held that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004). We have also previously held that, although mere passage of time is an insufficient reason to deny leave to amend, undue delay could support such a denial. *See Hester v. Int'l Union of Operating Eng'rs, AFL-CIO*, 941 F.2d 1574, 1578-79 (11th Cir. 1991) (holding that a party could not amend its complaint after engaging in undue delay because the party had waited an inexplicably long time after learning of reason to amend before seeking leave to amend and opportunities to amend had passed).

Here, Rhiner has abandoned on appeal the issues of why the district court improperly dismissed as a defendant the Secretary of the FDC appointed after his assault, as well as his claims for injunctive relief, by offering only conclusory statements that the district court erred without addressing the specific reasons the court gave for those rulings.  Furthermore, the district court did not abuse its discretion in denying Rhiner leave to amend his complaint, because his attempt to add as a party the Secretary of the FDC at the time of his assault would have been

4

futile due to the district court's dismissal of his injunctive-relief claims.

Accordingly, we affirm as to this issue.

II.    RHINER'S CHALLENGE TO THE DISTRICT COURT'S GRANT OF
       SUMMARY JUDGMENT WITH RESPECT TO HIS CLAIMS FOR (1)
       GANG MEMBER ASSAULTS ON NON-GANG MEMBERS; (2)
       ASSAULTS WITH RAZORS; AND (3) ASSAULTS IN THE "BLIND
       SPOT"

We review a district court's grant of summary judgment *de novo*, applying

the same legal standards used by the district court. *Brown v. Crawford*, 906 F.2d

667, 669 (11th Cir. 1990). The question is whether the evidence, when viewed in

the light most favorable to the nonmoving party, shows that no genuine issue of

material fact exists, and that the moving party is entitled to judgment as a matter of

law. *Id.* "An issue of fact is 'material' if, under the applicable substantive law, it

might affect the outcome of the case. An issue of fact is 'genuine' if the record

taken as a whole could lead a rational trier of fact to find for the nonmoving party."

*Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (discussing the

summary judgment standard in Fed. R. Civ. P. 56(a)). We generally will not

consider the merits of issues not raised before the district court. *Narey v. Dean*, 32

F.3d 1521, 1526-27 (11th Cir. 1994). Likewise, the record on appeal consists

solely of the original papers and exhibits filed in the district court, the transcript of

any proceedings, and a certified copy of the docket entries prepared by the district

clerk. Fed. R. App. P. 10(a).

5

Unsupported factual allegations, affidavits based on information and belief instead of personal knowledge, and mere conclusions are insufficient to withstand a motion for summary judgment. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). We have held that a plaintiff's sworn statement containing "descriptions of specific, discrete facts of the who, what, when, and where variety" was not conclusory and could be considered at the summary judgment stage. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). Evidence that would be inadmissible at trial cannot defeat summary judgment. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (noting that a district court can consider hearsay in support of summary judgment if that hearsay statement can be "reduced to admissible form"). Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Section 1983 of Title 42 of the U.S. Code creates a private right of action against any person acting under the color of state law who deprives another of any constitutional right. 42 U.S.C. § 1983. For prisoners, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the

6

excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010). Beyond restraining prison officials from inflicting "cruel and unusual punishments" upon inmates, the Eighth Amendment requires officials to take reasonable measures to guarantee the safety of the inmates, including protecting inmates from violence at the hands of other inmates. *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1319-20 (11th Cir. 2016). To survive summary judgment on a plaintiff's failure-to-protect claim, the plaintiff must produce sufficient evidence showing the existence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).

The first element of a failure-to-protect claim—whether a substantial risk of serious harm existed—is an objective determination. *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). To show a substantial risk of serious harm, a prisoner must provide evidence that there was a "strong likelihood" of his injury occurring, because the mere possibility of injury is not enough. *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (citation omitted). The occurrence of the prisoner's injury is also not enough, on its own, to show after the fact a substantial risk of serious harm. *Id.* at 1302. We have held that, where a "perfect storm of events" was necessary for the plaintiff's injury to

7

occur, there was not a substantial risk of serious harm. *Id.* at 1303 (quotation marks omitted).

In *Purcell*, we stated that, while confinement in a prison where "violence and terror reign is actionable," an occasional, isolated attack by one prisoner on another may not constitute cruel and unusual punishment. *Purcell*, 400 F.3d at 1320. We then held that, viewing the facts of the case in the light most favorable to a jail inmate, no substantial risk of serious harm existed because there was no history of violence that showed that prisoners were exposed to a "constant threat of violence." *Id.* at 1321-22 & n.21 (noting that (1) although inmate fighting did occur, it was not the norm, and it was not linked to any recurring specific cause, and (2) in a jail that housed over a hundred inmates, evidence of only two or three serious fights over a nine-month period did not establish that serious inmate-on-inmate violence was frequent or pervasive). Furthermore, we have held that 33 incidents involving weapons, out of a prison population between 830 and 990 inmates, where only 4 incidents occurred in the "back hallway" in which the plaintiff was assaulted, was "hardly sufficient to demonstrate" that violence and terror reigned at the prison. *Harrison*, 746 F.3d at 1300.

The second element of a failure-to-protect claim—deliberate indifference to a substantial risk of harm—has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than

8

gross negligence. *Id*. at 1298. To show disregard of risk, the plaintiff must produce evidence that the defendant disregarded a risk by failing to respond to it in an objectively reasonable manner. *Caldwell*, 748 F.3d at 1099. Prison officials might avoid Eighth Amendment liability where they show: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts, but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) "that they responded reasonably to the risk, even if the harm ultimately was not averted." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617-18 (11th Cir. 2007) (quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

Finally, to impose supervisory liability, a prisoner must show either that the prison official directly participated in the unconstitutional conduct or that there was a "causal connection" between the prison official's conduct and the constitutional violation. *Harrison*, 746 F.3d at 1298. To show this causal connection, the prisoner must show that there was "a history of widespread abuse" that put the supervising official "on notice of the need to correct the alleged deprivation," yet the official failed to do so. *Id.* (citation omitted). Alternatively, a causal connection can be shown if a supervisor had a "custom or policy" that resulted in deliberate indifference to a prisoner's constitutional rights. *Id.* (citation omitted).

9

Furthermore, lay witnesses may not offer testimony on scientific matters that fall under the scope of expert-witness testimony.  Fed. R. Evid. 701 & 702.

Here, the district court did not err in granting summary judgment for the defendants on Rhiner's gang-violence, razor-assault, and blind-spot claims because he failed to provide sufficient evidence creating a genuine issue of material fact as to whether there was a substantial risk of serious harm, the defendants had subjective knowledge of any risk, or the defendants' deliberate indifference caused a constitutional violation.

A.  Gang Member Assaults on Non-Gang Members

First, as to Rhiner's claim regarding gang member on non-gang member violence, he failed to provide sufficient evidence to create a genuine dispute of material fact as to whether pervasive violence existed that presented a substantial risk of serious harm, whether the defendants had subjective knowledge of that risk, or whether there was causation between some deliberate indifference and his injuries.  While Rhiner contends that he submitted enough evidence to show that gang member on non-gang member assaults constituted a substantial risk of serious harm, the only evidence in the record tending to show that there were a large number of gang member on non-gang member assaults consisted of Rhiner's and other inmates' conjectures on the number of assaults.  Even if those affidavits were proper, which they may not have been due to Rhiner's express promise to give the

10

inmates a portion of his potential damages award, the inmates' statements were insufficient to meet the summary judgment burden because they lacked any specifics and consisted of unsupported factual allegations and statements based on belief instead of personal knowledge. *See Ellis*, 432 F.3d at 1327. Furthermore, unlike the sworn and detailed statements in *Feliciano* that provided who, what, when, and where information, the inmates' statements here offered no information on how they came to learn the information or on what they based their numerical estimates. *See Feliciano*, 707 F.3d at 1253. Rhiner additionally conceded that, when he said that gang assaults were well documented, he was referring to documentation within OCI's database. Thus, the only true evidence for summary judgment purposes as to the pervasive nature of gang violence at OCI consisted of Johnson's affidavit discussing ten possible gang-related assaults in the approximately two years preceding Rhiner's assault, which, by itself, is too infrequent under this Court's precedent to establish that gang on non-gang assaults constituted a substantial risk of serious harm. *See, e.g., Harriso*n, 746 F.3d at 1300; *Purcell*, 400 F.3d at 1321-22 & n.21.

Similarly, Rhiner failed to show a genuine issue of material fact as to whether the defendants were deliberately indifferent by failing to produce sufficient evidence that they had subjective knowledge of a substantial risk of serious harm. Even if Rhiner's evidence had shown that there were more than ten

gang-related assaults, he failed to show that the defendants subjectively knew of those other assaults.  Severson and Snyder both stated in their affidavits that they got their information on assaults from OCI's database, , and, according to Johnson, OCI's database showed at most only ten gang member on non-gang member assaults in the two years preceding Rhiner's assault.  Furthermore, inmate Otero testified that inmates rarely told officers about fights, and inmate Handley stated in his affidavit that inmates rarely told officers the truth about assaults and made up stories to explain their injuries.  Thus, Rhiner failed to show that the defendants had subjective knowledge of a substantial risk of serious harm.  *See Rodriguez*, 508 F.3d at 617-18.

Furthermore, Rhiner failed to show that there was a causal connection between the defendants' conduct and any Eighth Amendment violation.  *See Harrison*, 746 F.3d at 1298.  Rhiner failed to show a history of widespread gang-related violence against non-gang members sufficient to put prison officials on notice of the need to correct the alleged deprivation, because the record suggests there were only ten such assaults at most in the relevant two-year period.  Further, Rhiner failed to show that a policy or practice of the defendants caused his injury, as Rhiner's own deposition suggested that the likely reason for the assault was the result of a personal disagreement between himself and another inmate, rather than

12

a simple rumor that the assault stemmed from gang members being housed with non-gang members. *See Harrison*, 746 F.3d at 1298.

### B. Assaults with Razors

As to Rhiner's razor-assault claim, he similarly failed to provide sufficient evidence showing a genuine dispute of material fact as to whether there was a substantial risk of harm regarding razors, whether the defendants had subjective knowledge of the risk that razors presented, and whether his injuries were caused by the defendants' deliberate indifference. First, Rhiner failed to demonstrate that razors constituted a substantial risk of harm or that the defendants had subjective knowledge of that risk. The only evidence that Rhiner submitted indicating that razor assaults could potentially constitute a substantial risk of serious harm consisted of inmate conjectures of the number of razor assaults. Those affidavits had the same problems as previously discussed above, in that, even if they were proper notwithstanding Rhiner's promise of future compensation, those documents lacked specific details on how those individuals came to those numbers, and otherwise contained only unsupported factual assertions that were insufficient to create a genuine issue of material fact for summary judgment purposes. *See Feliciano,* 707 F.3d at 1253; *Ellis*, 432 F.3d at 1327. Furthermore, OCI's database information, as well as sworn affidavits from Sergeant McGee-Aviano and Snyder,

13

indicated that there were only seven assaults involving razors and that they had no subjective knowledge of a large number of razor assaults. Additionally, inmate Handley stated in his subsequent affidavit that inmates often made up stories regarding the cause of their injuries, such that the defendants may not have been able to know of a large number of razor assaults, even if the actual number was higher than perceived. Overall, the evidence that was provided showed that there was no substantial risk of serious harm and that the defendants had no subjective knowledge of any potential risk, especially in light of Rhiner's statement that he was using OCI's database as the basis for his contention that the razor assaults were well-documented.

Rhiner also failed to provide sufficient evidence creating a genuine issue of material fact as to causation. Rhiner failed to connect any action, policy, or practice of Severson or Snyder to assaults using razors. *See Harrison*, 746 F.3d at 1298. While Rhiner initially alleged in his complaint that the prison's razor-exchange policy caused an increase in razor-based violence, the inmate statements that he submitted in opposition to the defendants' motion for summary judgment did not address the defendants' implementation of the razor-exchange policy, and the article on public-interest groups seeking to enjoin Alabama prisons from allowing prisoners unlimited access to razors had no factual bearing on OCI's razor-exchange policy. By contrast, the defendants proffered Deputy Hiss's

14

affidavit detailing OCI's policies and practices to ensure that the razors handed out in the exchange were returned.

Additionally, even if Rhiner's razor-assault claim is based on a theory other than supervisory liability, Rhiner failed to show that his wounds actually were caused by a razor because: (1) he was unconscious during the assault and could not have seen the weapon that his assailants used to cut him, and (2) although inmates Handley and Reid initially stated in their "written depositions" that they saw the assailants cut him with a razor, they later clarified their statements in their sworn affidavits and stated that they did not know for sure that the assailants had used a razor and had only assumed so.  Although Rhiner stated that he personally believed his cuts were caused by a razor, based on his 21 years of seeing razor cuts, that testimony would have been inadmissible at trial because it was improper lay-witness testimony regarding the medical cause of his cuts, which prevented it from being used to defeat summary judgment.  *See* Fed. R. Evid. 701 & 702; *Corwin*, 475 F.3d at 1249.  Rather, the only admissible evidence on the cause of Rhiner's cuts came from Bass, a registered nurse, who stated that Rhiner's wounds were too jagged to have come from a razor, and that Bass believed they were more likely caused by a piece of metal that had been sharpened to an edge.  Last, although Rhiner states that he has unspecified newly obtained medical evidence that his wounds were caused by a razor, that evidence was not part of the record before the

15

district court and cannot be considered for the first time on appeal. *See* Fed. R. App. P. 10(a). Thus, Rhiner failed to establish the requisite causation necessary to support his deliberate-indifference claims regarding razor violence.

### C. Assaults in the Blind Spot

Third, Rhiner's blind-spot claim fails because he failed to provide sufficient evidence to create a genuine issue of material fact as to whether the lack of security in the blind spot constituted a substantial risk of serious harm or whether the defendants had subjective knowledge of that risk. The evidence that Rhiner submitted tending to show that the blind spot constituted a substantial risk of serious harm consisted of: (1) inmate Handley's statement in his "written deposition" that Rhiner was assaulted near the chow hall's north entrance because it was a blind spot that officers could not see; (2) inmate Reid's statement in his "written deposition" that Rhiner was assaulted near the north entrance because it was a blind spot that security did not monitor, and assaults happened at the north entrance "all the time;" and (3) Otero's deposition statements that Rhiner was assaulted at the north entrance, which was a blind spot, and it was not uncommon for fights to occur in that area. Although those statements tended to support Rhiner's allegation that the blind spot was a well-known location for assaults and presented a substantial risk of serious harm, neither the affiants nor Rhiner himself provided specific facts to support their anecdotal perceptions, which made those

16

general statements insufficient to withstand the motion for summary judgment. *See Ellis*, 432 F.3d at 1327. Rather, the objective evidence indicated that only three incidents had occurred near the north entrance in the year prior to Rhiner's assault, which is too infrequent under this Court's precedent to establish that gang on non-gang assaults constituted a substantial risk of serious harm. *See, e.g., Harrison*, 746 F.3d at 1300; *Purcell*, 400 F.3d at 1321-22 & n.21.

Furthermore, Rhiner did not submit sufficient evidence showing that the defendants had subjective knowledge of any perceived risk posed by the blind spot. Rather, Severson and Snyder submitted affidavits attesting that they had no such knowledge, Sergeant McGee-Aviano and Lieutenant Campbell stated that the officers generally did not recall assaults near the north entrance being common, and inmate Otero stated at his deposition that inmates rarely notified prison officials when incidents did occur in the blind spot. Although Snyder stated that he had occasional discussions about chow hall security generally, nothing about that broad statement established his awareness of any substantial risk of harm, especially when he specifically disputed that premise in making his statement that he had occasional security discussions. *See Harrison*, 746 F.3d at 1298. Thus, Rhiner failed to provide evidence creating a genuine dispute of material fact as to whether the blind spot constituted a substantial risk of serious harm or whether the defendants had a subjective knowledge of that risk.

17

Accordingly, we affirm as to this issue.

## III.    RHINER'S CLAIMS CHALLENGING THE MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDERS

Section 636(b)(1)(A) of Title 28 of the U.S. Code provides that a district judge may designate a magistrate judge to hear non-dispositive pretrial matters pending before the district judge, including discovery motions.  28 U.S.C. § 636(b)(1)(A).  When a magistrate judge rules on a pretrial matter pursuant to § 636(b)(1)(A), "[a]ppeals from the magistrate's ruling must be to the district court," and we lack jurisdiction to hear appeals "directly from federal magistrates." *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980); *see also Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1066-67 (11th Cir. 1982) (11th Cir. 1982) (noting that a magistrate judge's decision must be rendered final by the district court prior to appeal).  More recently, we have applied *Renfro* in cases where a magistrate judge issues an order on a non-dispositive issue, a party fails to object to the order, and the same party subsequently appeals from the final judgment. *United States v. Schultz*, 565 F.3d 1353, 1359-62 (11th Cir. 2009); *United States v. Brown*, 299 F.3d 1252, 1259-60 (11th Cir. 2002) (stating that we lack jurisdiction to review a magistrate judge's order where the defendant fails to "ever raise[] the issue before the district court for review of the magistrate judge's order"), *judgment vacated and remanded*, 538 U.S. 1010 (2003), *opinion reinstated on remand*, 342 F.3d 1245, 1246 (11th Cir. 2003) (refusing to depart from *Renfro* as

18

prior panel precedent).  In *Schultz*, we added that this jurisdictional rule applies even if a magistrate judge fails to provide notice, in the order on non-dispositive matters, that objections must be filed within the applicable time limits.  565 F.3d at 1361-62.

Federal Rule of Civil Procedure 72(a) provides that any objections to a magistrate judge's non-dispositive pretrial order are to be made within 14 days, and that a party "may not assign as error a defect in the order not timely objected to."  Fed. R. Civ. P. 72(a).  Applying Rule 72(a), we have, in several cases, considered a party's failure to object to a magistrate judge's non-dispositive order as a waiver of the right to raise that issue on appeal from the final judgment, without considering jurisdiction.  *See, e.g.*, *Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365-66 (11th Cir. 2007) (holding that a *pro se* appellant waived the right to appeal certain discovery orders entered by a magistrate judge because he did not timely object to them before the district court); *Farrow v. West*, 320 F.3d 1235, 1248 n.21 (11th Cir. 2003) ("A party failing to appeal a magistrate judge's order in a nondispositive matter to the district court may not raise an objection to it on appeal to a circuit court.").  Although in those cases we did not apply the jurisdictional rule in *Renfro*, and we instead relied on waiver principles, cases that consider a magistrate's order without explicitly addressing whether we have jurisdiction to do so are not binding precedent for the proposition that we

19

have jurisdiction.  *See generally King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1168 (11th Cir. 2007) ("[T]he prior precedent rule does not extend to implicit jurisdictional holdings."); *Okongwu v. Reno*, 229 F.3d 1327, 1330 (11th Cir. 2000) (stating that we are not bound by a prior panel's *sub silentio* treatment of a jurisdictional question).

Here, we are without jurisdiction to review Rhiner's challenges to non-dispositive orders from the magistrate judge because he failed to object to those orders and appeal them to the district court.  Furthermore, the record contradicts Rhiner's contention that there were outstanding discovery issues at the time summary judgment was granted.  Accordingly, we affirm as to this issue.

**AFFIRMED.**