[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11906

_____

MARIA DOLORES CANTO MARTI,
as personal representative of the Estates of Dolores Martí Mercadé
and Fernando Canto Bory,

Plaintiff-Appellant,

*versus*

IBEROSTAR HOTELES Y APARTAMENTOS S.L.,
a Spanish limited liability company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:20-cv-20078-RNS

——————————————

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and GRANT, Circuit Judges.

GRANT, Circuit Judge:

Maria Dolores Canto Marti has waited almost three years for Iberostar Hoteles y Apartamentos S.L. to respond to her lawsuit. In January 2020 she sued Iberostar under the Helms-Burton Act, which grants the right to sue companies trafficking in property confiscated by the Cuban government. 22 U.S.C. § 6082. Marti claims that Cuba seized her family's hotel in 1961 and that Iberostar and the Cuban government now operate the hotel together.

Shortly after the suit was filed, the district court stayed the case at Iberostar's request. In support of the stay, Iberostar pointed to a European Union blocking regulation that prohibits participation in Helms-Burton suits—on pain of a fine that could reach 600,000 euros here. Iberostar had applied for an exception to the regulation, and the district court stayed the case pending the European Commission's decision. The suit has remained frozen ever since.

As months passed with no progress from the European Commission, Marti sought to end the stay. She twice moved to lift it, first in July 2020 and again in March 2021. The district court

refused, relying on international comity, fairness, and judicial economy.  Marti now appeals the denial of her second motion.

European Commission deliberations have stopped this case in its tracks, with no end in sight.  Marti has effectively been pushed out of federal court.  That means we have jurisdiction over the stay order, which is "immoderate" and thus unlawful.  It is indefinite in duration and has stalled the case for almost three years.  Considering this delay, we find that any earlier justifications for the stay have eroded.  We reverse the district court's denial of Marti's renewed motion and vacate the stay.  The case must go on.

## I.

The story of this suit began over sixty years ago.  In 1959, Fidel Castro seized power in Cuba and started to confiscate property from thousands of United States nationals and millions of his own citizens, many of whom later claimed asylum in the United States.  *See* 22 U.S.C. § 6081.  According to Marti, the Cuban government seized a hotel called "El Imperial" that belonged in part to her father, Fernando Canto Bory, whose family had owned the land and hotel since 1909.  At some point, Bory and his wife, Dolores Martí Mercadé, became United States citizens.  Although the two are now deceased, they allegedly never abandoned their combined one-half interest in the property.

Iberostar entered the picture in 2016.  That was the year Marti says that Iberostar contracted with the Cuban government to manage and operate El Imperial, now known as the Cubanacan

Imperial.  Marti alleges that Iberostar profits from this arrangement without authorization from the true owners of the hotel, including the heirs of Bory and Mercadé.  She now sues for damages as the personal representative of both estates under the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6021–6091.

Under that law, also known as the Helms-Burton Act, a United States national who owns a claim to confiscated property may sue any entity or person who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959." 22 U.S.C. § 6082(a)(1)(A).  Although it was enacted more than twenty-five years ago, Helms-Burton only recently gained teeth— it had been suspended by every United States president since its inception.  But in 2019, the suspension lapsed.  It has not been renewed since.

What has been renewed is the importance of oppositional measures taken by the European Union.  Just a few months after Helms-Burton was passed, the European Union enacted a regulation barring EU companies from complying with "any requirement or prohibition, including requests of foreign courts" that is based on certain laws, including the Helms-Burton Act.  *See* Council Regulation 2271/96, arts. 5, 11, annex, 1996 O.J. (L 309) 1, 2–5 (EC).  The regulation asserts that Helms-Burton could damage European Union interests by spurring United States legal proceedings against European companies.  *Id.* at 5.  Member states set their own penalties for violations, and Spain (where Iberostar is

21-11906                Opinion of the Court                5

incorporated) imposes a fine of up to 600,000 euros for breaches.[1] *See id.* art. 9; B.O.E. 1998, 16716 art. 5 (Spain). No one contests that the EU regulation seeks to obstruct suits like Marti's—even Iberostar has called it a "blocking regulation."

The regulation does, however, create an exception. Companies may petition the European Commission for authorization to litigate under one of the disfavored laws, "to the extent that non-compliance would seriously damage their interests" or those of the European Union. *See* 1996 O.J. (L 309), arts. 5, 7. As the Commission deliberates on these applications, it is instructed to set its own internal deadlines while taking "fully into account the time limits" that bind the person or entity applying for the exception. *Id.* art. 7(b).

Iberostar applied for an exception on April 15, 2020, a few weeks before its answer was due. Right after applying, Iberostar moved in the district court to stay the proceedings while it waited for a decision from the Commission. The initial request was limited to a stay of seventy-five days.

The district court granted the stay on April 24, 2020 in "the interest of international comity." The court's order also emphasized the fine that Iberostar could face if it chose to litigate without authorization. Perhaps in recognition of that concern, the

---

[1] Though the law expresses the fine in pesetas, Spain's currency at the time of passage, the parties agree that the maximum fine for a breach under Spanish law is 600,000 euros.

court stayed the case not for seventy-five days, as Iberostar had requested, but "until the European Union grants Iberostar's request for authorization." The court also required status reports from Iberostar every thirty days.

Three months came and went with no decision from the Commission. Marti moved to lift the stay, noting that more than seventy-five days had passed. She also protested that she had no way to evaluate the Commission's progress; although she had asked for copies of Iberostar's application and other correspondence, Iberostar refused to disclose any of its communications with the Commission or Spanish authorities. That left Marti (and the court) with only Iberostar's status reports. Apart from this information deficit, Marti argued, comity did not demand that United States courts defer to proceedings under foreign blocking statutes, and the indefinite stay was otherwise improper. In response, Iberostar asserted that the stay was neither improper nor indefinite because it was justified by international comity and because the Commission proceeding was moving forward.

The district court sided with Iberostar roughly two months later, in a September 2020 order. *Marti v. Iberostar Hoteles y Apartamentos S.L.*, No. 20-20078-Civ, 2020 WL 5573265 (S.D. Fla. Sept. 17, 2020). In deciding to maintain the stay, the court built its analysis on three principles. The court reasoned that (1) international comity favored a stay because the European Commission has a "strong interest in evaluating its own rules and

regulations"; (2) fairness to the litigants favored a stay because Iberostar faced potential fines of up to 600,000 euros; and (3) judicial efficiency favored a stay because "there is no reason to presume that the European Commission is unlikely to render a prompt decision." *Id.* at *2–4. The court also concluded that its stay was "*not* indefinite because it will end as soon as the European Commission rules on Iberostar's application." *Id.* at *3.

Five more months passed, along with six more status reports. In these reports, Iberostar relayed a few updates from the Commission. According to Iberostar, in September 2020 the Commission highlighted the "complexity" of the request. Two months later the Commission blamed the "challenges presented" by the Covid-19 pandemic for lengthening the process. The next month it claimed to be "actively liaising" and it assured Iberostar that any "assessments and investigations will shortly be completed and the authorization process will pursue its course." In February 2021, however, the Commission reported that its process had "raised questions and possible gaps of information that require further investigation."

About two weeks later, in March 2021, Marti renewed her motion to lift the stay and asked, in the alternative, for the district court to certify an appeal under 28 U.S.C. § 1292(b). She reiterated her previous arguments and emphasized the continuing passage of time: "Over 300 days have passed since Defendant submitted its application," she said, and "there is no end in sight." She also

argued that Iberostar's reports of its conversations with the Commission revealed a pattern of endless delay.

The district court denied both requests two months later in May 2021. But rather than considering the motion anew, the court construed Marti's filing as a motion to reconsider the earlier September 2020 order denying the first motion to lift the stay. "Reconsideration is appropriate only in very limited circumstances," the court said, and besides "the passage of additional time, the circumstances presented by this matter have not changed." The court also clarified that the stay would last only until the Commission issued a decision on Iberostar's application, even if that decision was a denial of the company's request. Finally, the court declined to certify the question for appeal under § 1292(b).

Marti now appeals the district court's May 2021 denial of her renewed motion to lift the stay, citing 28 U.S.C. § 1291 and the collateral order doctrine for jurisdiction. She appeals only the May 2021 order, and not the earlier September 2020 denial or the original April 2020 order staying the case.

## II.

Whether Marti's March 2021 motion is construed as a motion for reconsideration or a renewed motion, we review for abuse of discretion. *See CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) (stay orders); *Corwin v.*

21-11906                Opinion of the Court                9

*Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007) (motions for reconsideration).

## III.

Marti styled her March 2021 filing as a renewed motion to lift the stay, and we agree with that characterization. The motion explained that circumstances had changed substantially since the district court's original denial in September 2020. Over five more months had passed without a decision from the Commission—so the length of the stay had more than doubled. And Marti had learned from Iberostar's status reports that the Commission had reported delays in its process resulting from the complexity of the issues, the Covid-19 pandemic, and various consultations that it said required further investigation. The new circumstances here are "important enough that the latest motion is a viable being in its own right instead of merely a re-packaging in new garb of the corpse of an old motion in an attempt to resurrect it." *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 290 F.3d 1250, 1254 (11th Cir. 2002). Significant updates—surrounding a stay with no specified end date—rendered Marti's request a renewed motion, and not a motion for reconsideration.[2]

---

[2] For these reasons, Marti's appeal was also timely. Marti appealed within the standard thirty-day window for appeal of a "judgment or order." *See* Fed. R. App. P. 4(a)(1)(A). We allow appeals of motions to vacate preliminary injunctions in similar circumstances. *See Birmingham Fire Fighters Ass'n 117*, 290 F.3d at 1254.

The unique context of a stay admittedly leaves the line between a renewed motion and a motion for reconsideration blurry in some circumstances.  But here, the district court needed to review a wide range of facts and circumstances that had emerged since its previous denial, all of which were crucial to deciding the question.  That is enough to satisfy us that this was necessarily a renewed motion.

## IV.

We now turn to whether we have jurisdiction to hear the appeal.  Congress has granted this Court jurisdiction to hear "final decisions," a term that ordinarily refers to decisions ending litigation on the merits.  28 U.S.C. § 1291; *Plaintiff A v. Schair*, 744 F.3d 1247, 1252 (11th Cir. 2014).  And the "usual rule," is that a stay falls outside that category.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983).  After all, stay orders generally leave much to be decided.  But some stays come closer to ending litigation than to delaying it.  When a stay order puts a defendant "effectively out of court" we have used a "practical construction of finality" to treat that order as final for purposes of § 1291. *Miccosukee Tribe of Indians of Florida v. South Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1195 (11th Cir. 2009) (quotations omitted).  Because the court's May 2021 denial left

Marti effectively out of court, we conclude that we have jurisdiction.[3]

## A.

"Effectively out of court" jurisdiction was first recognized by the Supreme Court in *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713 (1962). There, a district court had decided to wait for state courts to decide a particular legal question before it heard the plaintiff's claims. *Id.* at 714. There was just one problem—no relevant state case had even been filed. *Id.* Consequently, the stay effectively barred the litigants from federal court, which made the district court's order final for jurisdictional purposes. *Id.* at 715 n.2. The Supreme Court later elaborated that "most stays do not put the plaintiff 'effectively out of court'"—but "a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court." *Moses H. Cone*, 460 U.S. at 10 n.11.

To concede in that sort of jurisdictional surrender would violate the federal courts' "virtually unflagging obligation" to exercise jurisdiction. *See id.* at 15 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). And this same logic led our Circuit to extend "effectively out of court" jurisdiction to stays entered out of deference to non-state

---

[3] Marti also argued that jurisdiction is proper under the collateral order doctrine. Because we have jurisdiction under § 1291, we need not consider this argument.

proceedings—including those in foreign countries. *Miccosukee*, 559 F.3d at 1195.

One way parties may be exiled from the federal court system and thus "effectively out of court" is when their proceeding is placed into what we have called a state of "suspended animation." *Id.* at 1197. In *Miccosukee*, we observed that this Court has found suspended animation four times. *See id.* Each time, a federal court had entered a stay to wait for a different legal proceeding to conclude—a case in Italian court, a case in a state court, a jurisdictional inquiry in the Iran Claims Tribunal, and a proceeding with the Equal Employment Opportunity Commission. *See King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1169 (11th Cir. 2007); *American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1522–23 (11th Cir. 1984); *CTI-Container*, 685 F.2d at 1287–88; *Hines v. D'Artois*, 531 F.2d 726, 728–32 (5th Cir. 1976).[4]

Those four cases also had something else in common: each of their stays had resulted in "indefinite delays pending the outcome of proceedings that were unlikely to control or to narrow substantially the claims or unresolved issues in the stayed lawsuit." *Miccosukee*, 559 F.3d at 1197. The claims in those cases thus "languished for no good reason." *Id.*

---

[4] In our en banc decision in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Of course, not every stay puts a case in suspended animation. In *Miccosukee* itself, the district court had stayed the case to await the outcome of a parallel appeal—one that was filed in the same federal district court, between the same parties, and relating to largely the same issues. *Id.* at 1193, 1196–98. The appealed case was "likely to have a substantial or controlling effect" on the stayed case, which we said was a "good," if not "excellent" reason for the stay. *Id.* at 1198. Put another way, *Miccosukee* lacked what unified our prior precedents: a stay resulting in indefinite delays in favor of a proceeding that was unlikely to substantially affect the merits of the stayed case.

## B.

Guided by *Miccosukee*'s insights, we consider whether Marti is effectively out of court by suspended animation.

To begin, it is plain enough that the stay here has resulted in indefinite delays. When the district court issued the May 2021 order on appeal, the stay had already been in place for over a year— a lengthy delay. And as the district court emphasized in its order, the case will only proceed "once the European Commission reaches a decision." This condition puts the stay entirely at the discretion of the Commission, a body that has not proved diligent in its timing. A stay dependent on the complete discretion of a third party is almost definitionally indefinite—it has no exact or even reasonably foreseeable limits.

Here, European discretion appears absolute. The blocking regulation includes no deadlines or timetables for the application process, and the Commission has not shown steady progress toward a final decision. *See* 1996 O.J. (L 309), art. 7. And because Marti and Iberostar agree that the regulation has "rarely been tested, and never in the context of a Helms-Burton Act lawsuit such as this one," no party has pointed to a historical pattern that could supply a practical estimate for the length of this process. *Compare CTI-Container*, 685 F.2d at 1288 (finding stay indefinite where it was "difficult to accurately predict" how long the Iran Claims Tribunal would take to decide its jurisdiction), *with Miccosukee*, 559 F.3d at 1198 (declining jurisdiction over a stay while appeal was pending in this Circuit). The "nature, extent, and duration" of the EU proceeding is unknown; the stay is indefinite. *Cessna Aircraft*, 505 F.3d at 1169.

The Commission proceeding is also "unlikely to control or to narrow substantially the claims or unresolved issues in the stayed lawsuit." *Miccosukee*, 559 F.3d at 1197. The proceeding is entirely unrelated to the merits of this case. Instead, the Commission will make a purely administrative decision: whether to authorize Iberostar to defend itself in United States courts or impede it from doing so. That is all—the administrative decision will affect neither Marti's claims nor Iberostar's defenses. It will not supply new facts or rule on issues relevant to these claims and defenses. It has no relation to the claims or issues before the court.

Iberostar protests that the Commission's decision will "control or significantly inform" this case because it will "govern whether Iberostar will defend on the merits or will be required to decide between defaulting or facing hefty fines." We can see why Iberostar would like to have that information—the Commission's decision will affect the company's cost-benefit analysis, litigation strategy, and incentives to settle. All the same, that decision will not control or inform the legal or factual issues of the case.

We have retained jurisdiction to consider stays even when the outside proceeding had a much stronger potential effect on the stayed case than the one here. In *CTI-Container*, for example, the Iran Claims Tribunal would have considered the merits of the defendant's impleader claim if it had concluded that it had jurisdiction. *See* 685 F.2d at 1287–88. In *Cessna Aircraft*, both proceedings involved facts about "the same accident" and the district court believed the Italian case would resolve some of the Italian law issues in the stayed case. 505 F.3d at 1164–65. And in *Hines*, the EEOC action was based on the same alleged discrimination, so any EEOC investigation or conciliation could have informed the claims in the stayed case. *See* 531 F.2d at 728. Even so, this Court still exercised jurisdiction in all three cases. Jurisdiction is all the more appropriate here, where the Commission's administrative decision will have no conceivable relation to the claims and issues of this case.

In sum, as of the district court's May 2021 order (if not before), Marti's case was in suspended animation and she was

effectively out of court. This case has the "one characteristic" shared by all four previous cases in this Circuit of suspended animation: a stay "resulting in indefinite delays pending the outcome of proceedings that were unlikely to control or to narrow substantially the claims or unresolved issues in the stayed lawsuit." *Miccosukee*, 559 F.3d at 1197. Jurisdiction is proper under 28 U.S.C. § 1291.

## V.

Because we have jurisdiction, we move to the substantive question—whether to vacate the stay. A district court has "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *Hines*, 531 F.2d at 733. Consequently, appellate courts will rarely interfere with stay orders. But if a stay is "immoderate," we must vacate it. *Id.*; *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). This one is.

Generally speaking, a stay is not "immoderate" or "unlawful" if it is designed so that "its force will be spent within reasonable limits." *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936); *see also CTI-Container*, 685 F.2d at 1288. But if it goes beyond those reasonable limits the equation changes. In evaluating whether a stay is immoderate, this Court examines "both the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay." *Trujillo*, 221 F.3d at 1264. Whether a stay is immoderate hinges on these "two variables."

*Hines*, 531 F.2d at 733.  Here, these points overlap somewhat with our jurisdictional analysis.

The first factor is easy enough: this stay is indefinite in duration and scope.  Again—the entire case is stayed until the date of the Commission decision.  That date cannot be predicted and may never occur.  *Cf. Trujillo*, 221 F.3d at 1264.

The second factor requires more analysis, though in the end it also points against the stay—the district court's reasoning is not tenable.    The court cited three reasons for its decision: (1) international comity; (2) fairness to litigants; and (3) judicial economy.[5]  These reasons cannot support the stay.

First, international comity.  International comity works to "promote justice between individuals, and to produce a friendly intercourse between the sovereignties to which they belong." *Hilton v. Guyot*, 159 U.S. 113, 165 (1895) (quotation omitted).  It is not, however, a "matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other."  *Id.* at 163–64.

---

[5] These are the same three "principles" set out in *Turner*, which considered whether a lawsuit should have been stayed or dismissed out of deference to parallel German proceedings. *See Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994).  Marti asserts that *Turner* is not an appropriate comparator case, but we need not decide whether that framework is workable here to analyze the court's reasoning.

Before considering international comity, a "threshold question" is whether the proceedings are parallel. *Seguros Del Estado, S.A., v. Scientific Games, Inc.*, 262 F.3d 1164, 1169–70 (11th Cir. 2001). The two proceedings here are not because they involve "materially different issues, documents, and parties." *Id.* at 1170; *see also Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." (quotation omitted)). Marti is not a party to the Commission deliberation. That deliberation will lead to a foreign administrative decision, not a judicial act.[6] And that administrative decision will have no effect on the claims here—it will only influence how one party chooses to litigate.

Three other circumstances of this case further blunt any force international comity might have as a justification. The Commission is deliberating under a regulation designed to block United States law; Iberostar admits as much. And foreign blocking statutes are not always given the same deference as other rules of law. *Cf. Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987). Just so

---

[6] Our cases considering international comity have generally occurred in the context of whether to abstain out of deference to a foreign court, not an administrative body. *See, e.g.*, *Turner*, 25 F.3d at 1523 (staying case out of deference to judgment in a German court case); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1224 (11th Cir. 1999) (staying case out of deference to Bermuda court action); *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1308 (11th Cir. 2008) (deferring to a judgment by a court in Belize).

here, where the competing regulation does not just overlap with United States law generally, but targets the basis for Marti's suit specifically.  1996 O.J. (L 309) at 5.  We see no reason that comity should require indefinite suspension of United States law so that a foreign blocking statute can have its full effect.

Timing plays a role here too.  Over two and a half years have passed since Iberostar first filed its application.  We need not decide when comity expires to recognize that less deference is owed to the Commission after a few years than after a few days.[7]  In fact, the regulation itself anticipates that applicants for an exception may be under other deadlines; as we have said, it instructs the Commission to take "fully into account the time limits which have to be complied with" as it decides when to issue an opinion.  1996 O.J. (L 309), art. 7(b).  It thus recognizes that comity may not always result in indefinite—much less infinite—accommodation.

Finally, the Commission has not followed through on its own deadlines.  As long ago as December 2020, Iberostar reported that the Commission's "assessments and investigations" would "shortly be completed."  One and a half "short" years later, the Commission finally provided an estimated decision date.  From Iberostar's August 2022 status report: "The Commission stated that it was about to conclude its assessment and the Commission will

---

[7] When asked, Iberostar's counsel agreed that "at a certain point it does become too long" to wait for the Commission.

deliver its response 'by mid-September 2022' after the summer recess."

Mid-September has passed. As have mid-October and mid-November. The Commission's unwillingness to commit to its own deadlines underscores the limits of international comity: less deference and respect is owed to a foreign body that has not followed through with its own representations about the length of its proceeding. Comity cannot justify continuing this stay any longer.

The second rationale the district court offered was fairness to the parties. The court determined that the balance of harms supported the stay because Marti's harm was "speculative," while Iberostar's was "immediate and concrete."

We see the harms differently. When evaluating stays, courts must also consider "the danger of denying justice by delay." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 153 (1964) (quotation omitted). Even ignoring Marti's concerns about ultimate relief, she suffers an ever-mounting harm from each passing month without an opportunity to present her arguments in court. Meanwhile, Iberostar's potential fine is anything but immediate and concrete. Even if the Spanish government chooses to levy a fine—under a regulation it has never used before—the amount is unclear. The fine is *up to* 600,000 euros, which leaves a wide range. B.O.E. 1998, 16716 art. 5. And even if the stay were lifted and the Commission did not grant an exception, Iberostar may never pay a fine in any event; it could choose to settle, lobby the Spanish government for

relief from the fine, or not participate in the suit. Iberostar's harms are thus more speculative than Marti's. On balance, fairness to the litigants does not favor continuing the stay.

Lastly, the court relied on the "efficient use of judicial resources" in continuing the stay. In explaining this justification, the court said only that judicial economy weighed in favor of the stay because there was "no reason to presume that the European Commission is unlikely to render a prompt decision."

That rationale has evaporated. With the additional passage of time, ample reason now exists to doubt the Commission's promptness. What's more, because nothing the Commission says will affect the merits of this case, waiting on its decision serves more to conserve Iberostar's resources than those of the United States courts.

In short, all signs point to an immoderate stay. This stay's duration is indefinite, and the Commission has supplied no reliable projection for the timing of its decision. Each reason cited to justify the stay has either been eroded by the passage of time or negated by the nature and progress (or lack thereof) of the Commission proceeding. As a result, we conclude that the stay is immoderate and must be vacated.

★    ★    ★

Almost three years have passed since Marti first filed her lawsuit. She cannot recoup those three years. But now she can pursue her claims, Iberostar can assert its defenses, and this suit can

continue.  We **REVERSE** the court's May 2021 order denying the renewed motion to lift the stay, **VACATE** the stay, and **REMAND** for the case to proceed.